NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GERARD SCHMIDT<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 12-06825 (SDW)<br><br>**OPINION**<br><br>November 25, 2013 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Gerard Schmidt's ("Plaintiff" or "Mr. Schmidt") appeal of the final administrative decision of the Commissioner of Social Security (the "Commissioner"), with respect to an administrative law judge's denial of Mr. Schmidt's claim for Social Security Disability Insurance Benefits ("SSDI") pursuant to 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons stated herein, this Court **REMANDS** this matter for further review.

I. **FACTS AND PROCEDURAL HISTORY**

   *a. Work and Medical History*

   Mr. Schmidt was born on March 1, 1956 and is currently 57 years old. (R. 61, 109.) Although he attended school through the 12th grade, Mr. Schmidt did not graduate from high school. (R. 50.) He worked as a tow truck driver for a car towing company from 1991 until 2000. (R. 50.) He ceased

working as a tow truck driver on April 2, 2000, because of alleged panic attacks and a phobia about driving. (R. 123-24.) On March 23, 2003, Mr. Schmidt fell and injured his left knee, sustaining a quadriceps tendon rupture. (R. 169.) This condition was surgically repaired on May 21, 2003, by Dr. James M. Parolie. (R. 173.) Mr. Schmidt initially recovered well from the surgery; however, contrary to Dr. Parolie's recommendations in the late-summer and early-fall of 2003, he failed to undergo physical therapy. (R. 177-82.)

The evidence of record shows that Mr. Schmidt eventually presented for an initial physical therapy evaluation on February 11, 2004. (R. 338.) Mr. Schmidt informed the therapist that he was not experiencing any pain; that he had previously worked as a truck driver; and that he used to like to ride bikes. (R. 338.) He complained of difficulty with climbing stairs and with squatting and kneeling, but he did not have any trouble driving. (R. 338-40.) The therapist reported that there was atrophy of the left quadriceps, with no apparent edema, pain or palpation. (R. 339.) The therapist concluded that he had weakness in the left quadriceps, and that he would benefit from physical therapy. (R. 340.) The therapist therefore recommended that Mr. Schmidt undergo physical therapy two or three times per week to improve his functional mobility. (R. 341.) The prescribed therapy plan included Therex therapy, gait training, pain management, balance activities and physical therapy for four weeks.[1] (R. 340-41.)

Mr. Schmidt's progress reports for February 11, 2004 through February 26, 2004 reveal that Mr. Schmidt complained of soreness and fatigue during each session while undergoing the Therex therapy. (R. 342.) Mr. Schmidt's physical therapy progress notes for March 2004 show him unable to do weight bearing exercises during wall squats. (R. 342.) The therapist reported the need to give him constant encouragement, often stopping while performing the Therex therapy. (R. 342.) The

---

[1] According to Mr. Schmidt, Therex therapy is short for "Therapeutic exercise," which is a component of physical therapy that includes strengthening and improving joint mobility, as well as stretching for muscle tightness and for range of motion defects. (Pl.'s Br. 5, n.2.)

2

medical evidence of record also reveals that Mr. Schmidt's last physical therapy session was on April 22, 2004. (R. 343.)

Although the evidence of record indicates that Mr. Schmidt was diagnosed with psychiatric disorders, there is no indication that he suffered from psychiatric disorders prior to June 30, 2004, the date upon which he last met the insurance coverage requirements to be eligible for SSDI. (R. 64.) The record shows that he first received psychiatric treatment on July 29, 2008, approximately four years after his last insured date. (R. 291.)

*b. Procedural History*

Mr. Schmidt applied for SSDI on March 27, 2009, alleging that since April 2, 2000, an enlarged heart, shortness of breath, panic attacks, and a phobia about driving prevented him from continuing his career as a tow truck driver. (R. 109, 123-25.) His claim was denied initially and was also denied upon reconsideration. (R. 25, 64-68, 70-72.) Mr. Schmidt thereafter submitted a written request for a hearing, which was conducted before an administrative law judge ("ALJ") on February 9, 2011. (R. 25, 75.) Mr. Schmidt appeared and testified at the hearing before the ALJ. (R. 25.) On March 15, 2011, the ALJ issued a decision denying Mr. Schmidt's SSDI claim, finding that Mr. Schmidt was not considered disabled as defined by the Social Security Act. (R. 25-31.)

## II. LEGAL STANDARD

In social security appeals, district courts have plenary review of the legal issues decided by ALJs. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). The court's review of the ALJ's factual findings, however, is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz*, 244 F. App'x. at 479 (citing *Hartranft*, 181 F.3d at 360)). The court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).

In considering an appeal from a denial of benefits, remand is appropriate "where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits." *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D.Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984).

### III. DISCUSSION

    *a. SSDI Test*

An individual will be considered disabled under the Social Security Act (the "Act") if he or she is unable to "engage in any substantial gainful activity [("SGA")] by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The physical or mental impairment must be severe enough to render the individual "not only unable to do his previous work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically accepted clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ." *Id*.

In order to establish a prima facie case of disability under the Act, a claimant bears the burden of demonstrating: (1) that she was unable to engage in SGA by reason of physical or mental impairment that could have been expected to last for a continuous period of at least twelve months, and (2) that the existence of such impairment was demonstrated by evidence supported by medically acceptable clinical and laboratory techniques. *See* 42 U.S.C. § 1382c (a)(3).

In determining disability, the Social Security Administration ("SSA") utilizes a five-step sequential analysis. *See* 20 C.F.R. § 416.920; *see also Cruz*, 244 F. App'x. at 479. A determination of non-disability at steps one, two, four, or five in the five-step analysis ends the inquiry. 20 C.F.R. § 416.920. A determination of disability at steps three and five results in a finding of disability. *Id.* If an affirmative answer is determined at steps one, two, or four, the SSA proceeds to the next step in the analysis. *See id.*

At step one, the Commissioner must determine whether the claimant is engaging in SGA. *See* 20 C.F.R. § 416.920(a)(4)(i). SGA is defined as work activity that is significant and done for

5

payment. 20 C.F.R. § 416.910. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is usually done for profit, whether or not profit is realized. 20 C.F.R. § 416. 972(b). If an individual engages in SGA, he is not disabled regardless of the severity of his physical or mental impairments. 20 C.F.R. § 416.920(a)(4)(i). If the individual is not engaging in SGA, the Commissioner proceeds to the next step. 20 C.F.R. § 416.920.

At step two, the Commissioner must determine whether the claimant has a medically determinable severe impairment or a combination of severe impairments. 20 C.F.R. § 416.920(c). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. *See id*. An impairment or combination of impairments is "not severe" when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921. If the claimant does not have a severe impairment or severe combination of impairments, he is not disabled. 20 C.F.R. § 416.920(c). If the claimant does have a severe impairment or severe combination of impairments, the analysis proceeds to the third step. 20 C.F.R. § 416.920.

At step three, the Commissioner must determine whether the claimant's impairment or combination of impairments meets the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If the claimant's impairment or combination of impairments meets the criteria of a listing and the duration requirement, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or combination of impairments do not, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e).

At step four, the Commissioner must determine whether the claimant has the residual function capacity ("RFC") to perform the requirements of his past relevant work. 20 C.F.R. § 416.920(f). In

making this determination, the Commissioner must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 416.920(e), 416.945. "Past relevant work" means work performed within the fifteen years prior to the date that the disability must be established. 20 C.F.R. § 416.960(b)(1). If the claimant has the RFC to perform his past relevant work, the claimant is not disabled. 20 C.F.R. § 416.960(b)(3). If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth step. *See* 20 C.F.R. § 416.920(a)(4)(iv).

At step five, the Commissioner must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. *See* 20 C.F.R. § 416.920(g).

The claimant bears the burden of persuasion in the first four steps. *See Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x. 761, 763 (3d Cir. 2009). If the claimant establishes that his impairment prevents him from performing any of his past work, the burden shifts to the Commissioner at step five to determine whether the claimant is capable of performing alternative, substantial, gainful activity present in the national economy. *See* 20 C.F.R. § 416.920(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).

  b. *The ALJ's Findings*

In his decision, the ALJ applied the five-step sequential analysis process prescribed by the SSA under the Act. At step one, the ALJ found that Mr. Schmidt did not engage in SGA between April 2, 2000, the onset date of Mr. Schmidt's alleged disability, and June 30, 2004, the date Mr. Schmidt last met the insured status requirements of the Act. (R. 27.) In conducting step two of the analysis, the ALJ determined that Mr. Schmidt "had the following severe impairments: affective disorder and a ruptured quadriceps tendon in the left leg." (R. 27.) At step three, the ALJ concluded that Mr. Schmidt's impairments did not meet or equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 27-28.) With regard to Mr. Schmidt's RFC, the ALJ found that Mr.

7

Schmidt had the RFC "to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), limited to understanding, remembering and carrying out simple instructions, with limitations in his ability to perform most postural limitations, and an inability to perform work involving pushing or pulling with the lower left extremity." (R. 28.) Therefore at step four, the ALJ determined that through his last insured date, Mr. Schmidt was unable to perform past relevant work. (R. 29.) Finally, at step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Mr. Schmidt could have performed through his last insured date. (R. 30). Based on his analysis of the five-step evaluation process, the ALJ determined that Mr. Schmidt was not under a disability, as defined by the Act, from the alleged onset date until the date of last insured. (R. 31.)

    *c. Analysis*

In seeking review of the ALJ's decision, Mr. Schmidt asserts three grounds upon which he argues justify reversal of the ALJ's decision: 1) the ALJ erred by failing to make credibility findings; 2) the ALJ's RFC assessment is not supported by substantial evidence; and 3) the ALJ erred by failing to obtain vocational expert testimony.

        i. <u>The ALJ's Credibility Findings</u>

First, citing 20 C.F.R. § 416.929(a) and Social Security Ruling ("SSR") 96-7p, Mr. Schmidt argues that the ALJ committed reversible error because "[a] review of the ALJ's decision reveals that he made no credibility findings regarding Mr. Schmidt's testimony." (Pl.'s Br. 8). Mr. Schmidt bases this contention on the ALJ's apparent failure "to enunciate and analyze Mr. Schmidt's testimony and to make a credibility finding consistent with his testimony." (*Id*. 8-9.) Plaintiff argues that this failure requires a remand of this matter with instructions to the ALJ to make proper credibility findings regarding Mr. Schmidt's testimony. (*Id*. 9.) This argument, however, is without merit.

    Under the Social Security Regulations, all of the claimant's symptoms, including whether and to what extent the claimant's symptoms "can reasonably be accepted as consistent with the objective

8

medical evidence[,]" are considered in determining whether the claimant is disabled. 20 C.F.R. § 416.929(a). SSR 96-7p explains that this regulation entails a two-step process wherein the ALJ must first determine if underlying mental or physical impairments exist that could cause the claimant's symptoms. (SSR 96-7p.) If such impairments exist, the ALJ's next task is to "evaluate the intensity, persistence, and limiting effects" of the claimant's symptoms to determine the extent, if any, the symptoms curtail the claimant's ability to perform basic work activities. (*Id.*) Of particular importance here, SSR 96-7p specifies as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. . . .When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.
>
> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. . . .The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

The ALJ was undoubtedly aware of his obligation to assess and discuss his credibility findings regarding Mr. Schmidt's testimony about his symptoms. To be sure, the ALJ explicitly states the controlling legal standard with respect to his credibility assessment, and then he concludes as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment

(R. at 29.) Thereafter, the ALJ explains that the only two medical records that proximate Mr. Schmidt's date of last insured reveal that he was capable of a wide range of sedentary work. (R. at 29.) The ALJ then goes into detail about the contents of the medical records. (R. at 29.) Furthermore, the ALJ notes the lack of "subsequent medical evidence or other credible documentation regarding the claimant's conditions until November of 2007." (R. at 29.) With regard to Mr. Schmidt's psychiatric disorder, the ALJ describes how "[t]he record indicates that the claimant began psychiatric treatment in July of 2008 after he became increasingly panicky with hypochondriac symptomology." (R. at 29.) Nevertheless, the ALJ still accorded Mr. Schmidt the benefit of the lack of evidence, finding that his affective disorder existed to a lesser degree prior to the last insured date. (R. at 29-30.)

In sum, the ALJ sufficiently considered and assessed Mr. Schmidt's credibility with regard to Mr. Schmidt's testimony about his symptoms. The ALJ's rationale for rejecting Mr. Schmidt's testimony is firmly rooted in the evidence of record. While the ALJ did not specifically recount and discredit every word of Mr. Schmidt's testimony, he was not under an obligation to have done so. *See Hur v. Barnhart*, 94 Fed. Appx. 130, 133 (3d Cir. 2001)("There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record."). Therefore, the ALJ sufficiently assessed Mr. Schmidt's credibility, and his finding is supported by substantial evidence.

    ii. <u>The ALJ's RFC Finding</u>

Second, Mr. Schmidt argues that the ALJ's RFC finding is not supported by substantial evidence. (Pl.'s Br. 10-14). Mr. Schmidt asserts four main reasons why he contends the ALJ erred in his RFC assessment: 1) he argues that the ALJ's RFC finding was deficient because it did not include a function-by-function assessment of Mr. Schmidt's limitations (*Id.* 11); 2) he contends that the ALJ failed to specify which postural limitations Mr. Schmidt could not have performed (*Id.* 12); 3) he argues that the record does not contain evidence from either an examining or non-examining

physician that supports the ALJ's RFC finding (*Id.* 10); and 4) he argues that the ALJ did not fully appreciate the evidence of record regarding Mr. Schmidt's mental limitations, which Mr. Schmidt maintains "affected his ability to perform sustained competitive employment, and reduced the occupational base of work that he could have performed on a sustained basis." (*Id.* 14.)

Mr. Schmidt's position that the ALJ failed to conduct a function-by-function assessment in his RFC finding has validity. The ALJ determined that Mr. Schmidt had the RFC to perform sedentary work with specified limitations. (R. 28). RFC is a conclusion about how a claimant's physical and mental impairments and symptoms affect the claimant's performance in a work environment. 20 C.F.R. § 416.9459(a)(1). SSR 96-8p explains that "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." It continues as follows:

> [T]he RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the individual can do past relevant work as he or she actually performed it.
>
> RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether an individual is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by- function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

SSR 96-8p. Additionally, SSR 96-8p prescribes *how* the ALJ must make the function-by-function assessment. Under SSR 96-8p, the assessment must analyze the exertional and nonexertional capacities of the claimant. (*Id.*) "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand

11

for 6 out of 8 hours') . . . ." (*Id.*) Nonexertional capacity, on the other hand, refers to work-related limitations that are not dependent upon an individual's physical strength. (*Id.*) This includes a claimant's mental health, for example. (*Id.*) Finally, the RFC assessment must include a narrative discussion of the evidence of record that supports the ALJ's conclusion. (*Id.*) In this narrative discussion, the ALJ must "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." (*Id.*); s*ee Pearson v. Barnhart*, 380 F. Supp. 2d 496 (D.N.J. 2005) (remanding the matter when "[t]he ALJ's residual functional analysis f[ell] short of what the Social Security Regulations require").

In the instant matter, the ALJ failed to adhere to the requirements of SSR 96-8p. First, the ALJ failed to articulate a function-by-function assessment of Mr. Schmidt's limitations and restrictions before expressing his RFC in terms of Mr. Schmidt's ability to do sedentary work. Indeed, the ALJ determined in the *initial* instance that Mr. Schmidt had the RFC to perform sedentary work with various limitations, in direct contrast to SSR 96-8p's direction to conduct a function-by-function assessment to determine if the claimant could have performed past relevant work. (R. 28.) A review of the ALJ's decision reveals that he did not perform the requisite function-by-function analysis. (*Id.* 25-31.) Nowhere does he separately consider the seven strength demands, nor does he analyze Mr. Schmidt's nonexertional capacity. (*Id.*) Since the ALJ's decision fell short of SSR 96-8p's requirements, remand is appropriate.

On remand, the ALJ must conduct a function-by-function analysis of Mr. Schmidt's exertional capacity, including the seven strength demands, and nonexertional capacity prior to expressing Mr. Schmidt's RFC in an exertional category, i.e., sedentary. This function-by-function assessment is required to determine whether Mr. Schmidt was able to perform past relevant work. After this

analysis, the ALJ can then express Mr. Schmidt's RFC in an exertional category and assess whether there were jobs in the national economy that Mr. Schmidt could have performed. Furthermore, the ALJ must discuss the function-by-function analysis in narrative form, citing to evidence of record that supports his decision. The discussion must specify the amount of time plaintiff was able to perform the exertional functions over an ordinary workday. *See Pearson*, 380 F. Supp. 2d at 507-08 ("In the present case, the ALJ did not specify the amount of time that the plaintiff was able to perform each of the seven exertional functions during an 8 hour day, particularly those which may be affected by plaintiff's exertional limitations. Thus, the ALJ failed to describe the maximum amount of each work-related activity the plaintiff was able to perform based on the evidence available in the case record as required by SSR 96-8p.") The Court notes that the ALJ may have conducted the function-by-function assessment correctly. But without the benefit of a fully explained decision, this Court cannot evaluate ALJ's function-by-function assessment. *See Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 2005) (stating that "an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests[,]" and without it, a reviewing court cannot "perform its statutory function of judicial review").

Mr. Schmidt also argues that the ALJ's RFC conclusion is deficient, because while it concluded that Mr. Schmidt could not perform most postural limitations, it failed to specify which postural limitations. This Court agrees.

The ALJ determined that Mr. Schmidt had the RFC to perform sedentary work "with limitations in his ability to perform most postural limitations." (R 28.) Importantly, "[t]he RFC assessment must include a narrative that shows the presence and degree of any specific limitations and restrictions, as well as an explanation of how the evidence in file was considered in the assessment." SSR 96-9p. The ALJ failed here to specify and discuss Mr. Schmidt's postural limitations, notwithstanding finding that Mr. Schmidt was unable to perform most postural

limitations. Mr. Schmidt's postural limitations are particularly important here since some postural limitations require a disabled finding. For example, under SSR 96-9P, "[a] complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply, but restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work." SSR 96-9p. The evidence of record shows that in February 2004, Mr. Schmidt had difficulty ascending and descending stairs and could not kneel or squat. (R. 339.) As such, it is possible that Mr. Schmidt had some inability, if not a complete inability, to stoop. On the other hand, the ALJ may have justifiably discounted this evidence. Without a narrative explanation from the ALJ, however, this Court cannot fully assess the ALJ's decision and remand is appropriate.

This Court has considered and rejects Mr. Schmidt's remaining two arguments. His reliance on the position that there is a lack of evidence from any physician that supports the ALJ's RFC assessment is misplaced. Although the ALJ will use all evidence of record to determine the claimant's RFC, the claimant is "responsible for providing the evidence [that the ALJ] will use to make a finding about" the claimant's RFC. 20 C.F.R. § 416.945(a)(3). Contrary to Mr. Schmidt's position, the ALJ relied upon the medical evidence that Mr. Schmidt made available to him in determining Mr. Schmidt's RFC. (R. 28-30.) The ALJ analyzed Mr. Schmidt's medical records from prior to his date of last insured and recounted the contents of the medical records in his decision. (R. 29.) The ALJ ostensibly relied upon evidence of record to determine Mr. Schmidt's RFC: "the only two medical records proximate to the last insured date indicate that the claimant was capable of a wide range of sedentary work limited to simple instructions." (R. 29.) Likewise, the Court rejects Mr. Schmidt's argument that his mental limitations affected his ability to have performed sustained competitive employment prior to the June 30, 2004 last insured date. The record is devoid of credible evidence

that Mr. Schmidt's affective disorder substantially limited him prior to the last insured date. As such, substantial evidence supports the ALJ's finding on this issue.

### iii. The ALJ's Failure to Obtain Vocational Expert Testimony

Mr. Schmidt complains that the ALJ's failure to elicit vocational expert testimony at step five of the sequential analysis was erroneous. Mr. Schmidt's contention is based on the ALJ's exclusive reliance on the Medical-Vocational Guidelines, or "grids[2]," to conclude that there was a significant number of jobs in the national economy that Mr. Schmidt could have performed, despite the ALJ's finding that Mr. Schmidt had exertional and nonexertional limitations. This Court agrees.

In *Sykes v. Apfel*, 228 F.3d 259 (3d Cir. 2000), the Third Circuit makes clear that the ALJ cannot solely rely on the grids at step five when the claimant has both exertional and nonexertional limitations. *Id.* at 269-70. The court admonishes as follows:

> The grids establish, for exertional impairments only, that jobs exist in the national economy that people with those impairments can perform. When a claimant has an additional nonexertional impairment, the question whether that impairment diminishes his residual functional capacity is functionally the same as the question whether there are jobs in the national economy that he can perform given his combination of impairments. The grids do not purport to answer this question, and thus under *Campbell*[3] the practice of the ALJ determining without taking additional evidence the effect of the nonexertional impairment on residual functional capacity cannot stand.

*Id.* at 270. The *Sykes* court advises that in situations where the claimant possesses exertional and nonexertional limitations, the ALJ must go beyond the grids and consider additional evidence, either via vocational expert testimony or by taking administrative notice of facts. *Id.* at 270-71. The court does caution that should the ALJ opt to take administrative notice, it must advise the claimant of his intention to do so and afford the claimant the opportunity to respond. *Id.* at 273.

---

[2] "Grids" is the colloquial name given to the Medical-Vocational Guidelines promulgated through rulemaking by the Secretary of Health and Human Services. *See* 20 C.F.R. pt. 404, subpt. P, app. 2.
[3] *Heckler v. Campbell*, 461 U.S. 458 (1983).

The ALJ here erred by relying exclusively on the grids although he found that Mr. Schmidt had exertional and nonexertional limitations. The Third Circuit was clear in *Sykes* that in such a situation, the ALJ cannot rely exclusively on the grids but must elicit additional evidence. On remand, should the ALJ again determine that Mr. Schmidt had exertional and nonexertional limitations, he must conduct step five of the sequential analysis in accordance with *Sykes*.

## IV. CONCLUSION

For the foregoing reasons, this Court finds that substantial evidence does not support the ALJ's decision. Accordingly, this Court **REVERSES** the ALJ's decision and **REMANDS** this matter to the ALJ for further proceedings consistent with this Opinion.

s/Susan D. Wigenton, U.S.D.J.

Orig: Clerk
Cc: Parties